S. SPENCER ELG (GA SBN 940592)
selg@ftc.gov
ANNA M. BURNS (GA SBN 558234)
aburns@ftc.gov
FEDERAL TRADE COMMISSION
225 Peachtree Street, Suite 1500
Atlanta, Georgia 30303
Telephone: (404) 656-1390
Facsimile: (404) 656-1379

Attorneys for Plaintiff Federal Trade Commission

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff,<br><br>   v.<br><br>TRACFONE WIRELESS, INC., also d/b/a STRAIGHT TALK WIRELESS, NET10 WIRELESS, SIMPLE MOBILE, and TELCEL AMERICA,<br><br>                Defendant. | **Case No.: _____**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiff Federal Trade Commission ("FTC") alleges:

## SUMMARY OF THE CASE

1. Since 2009, Defendant TracFone Wireless, Inc. ("TracFone") has solicited millions of consumers to purchase its prepaid mobile data service by advertising "unlimited talk, text, and data" for about $45 per month.

2. TracFone's promise of "unlimited" mobile data service, in particular, has been a powerful marketing tool. Mobile data service allows consumers to engage in online mobile activities such as viewing websites; navigating using GPS; communicating through emails, video chats, and texts; playing Internet-based mobile games; using mobile applications; and downloading or streaming audio and video content. These online mobile activities—all highly prized by consumers—are often data intensive.

3. Despite advertising its mobile data service as "unlimited," TracFone throttled (significantly reduced the speed of) or suspended (completely cut off) the mobile data service of millions of customers who exceeded fixed limits that TracFone set on the amount of mobile data that its customers could use in a thirty-day period. TracFone's data suspension practices prevented consumers from accessing mobile data service, and its data throttling practices seriously impaired consumers' ability to engage in online mobile activities.

4. In numerous instances, TracFone failed to disclose or adequately disclose its practice of enforcing fixed limits on the amount of mobile data service its customers could use in a thirty-day service period. In fact, until at least September 2013, TracFone did not state in most of its advertising or terms and conditions that it would suspend or throttle its customers' mobile data service if they used more than a fixed amount of mobile data in a thirty-day service period. In September 2013, TracFone began to include this information for all of its "unlimited" offerings, but often has tucked it away in small print that is not proximate to its claims of "unlimited" mobile data service.

5. Because TracFone failed to disclose or adequately disclose that it would throttle or suspend its customers' mobile data service once they used a fixed amount of mobile data in a thirty-day service period, its advertising of "unlimited" mobile data service has been deceptive.

6. Indeed, frustrated and injured by TracFone's deceit, consumers have filed numerous complaints with TracFone, consumer protection organizations, and state and federal agencies.

7. In the light of these facts, which are explained in detail below, the FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain a permanent injunction and other equitable relief for TracFone's acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with the advertising and sale of "unlimited" mobile data service.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2), and (d), and 15 U.S.C. § 53(b).

**PLAINTIFF FEDERAL TRADE COMMISSION**

10. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

11. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. § 53(b).

**DEFENDANT TRACFONE WIRELESS, INC.**

12. TracFone, also doing business as Straight Talk Wireless, Net10 Wireless, Simple Mobile, and Telcel America, is a Delaware corporation with its principal place of business at 9700 N.W. 112th Avenue, Miami, Florida 33178. TracFone transacts or has transacted business in this district and throughout the United States.

**COMMERCE**

13. At all times material to this Complaint, TracFone has maintained a substantial

course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

### DEFENDANT TRACFONE'S DECEPTIVE ACTS AND PRACTICES

#### *TracFone's Business and Brands*

14. TracFone is the largest prepaid mobile phone service provider in the United States with approximately twenty-five million subscribers, of which approximately 25% subscribe to one of TracFone's "unlimited" talk, text, and data plans.

15. Unlike the four largest network-based wireless providers (Verizon, AT&T, Sprint, and T-Mobile), TracFone does not own any wireless facilities. Instead, TracFone operates a "virtual" network by purchasing mobile services from network-based providers and then reselling those services to consumers under its own brands.

16. TracFone advertises and sells mobile phones, mobile phone SIM cards, and prepaid mobile phone service plans under a number of brands, including Straight Talk, Net10 Wireless, Simple Mobile, and Telcel America. It has registered trademarks for each of these brands.

17. TracFone does not manufacture the mobile phones or mobile phone SIM cards it sells to consumers. Nor does TracFone own the mobile network facilities that enable it to provide mobile phone services to consumers. It instead resells brand name phones and SIM cards from leading manufacturers, including Apple, Samsung, Motorola, and LG, and resells the services of leading mobile network providers, including AT&T, Verizon, Sprint, and T-Mobile.

18. TracFone advertises that it operates on the same networks as leading mobile networks providers. For example, many of TracFone's advertisements claim: "same networks, half the cost."

19. TracFone requires consumers to purchase a TracFone-branded mobile phone or mobile phone SIM card before subscribing to one of its prepaid mobile phone service plans. More than half of the phones sold for TracFone's "unlimited" talk, text, and mobile data service plans are "locked," meaning that they cannot be used with any other wireless provider.

20. TracFone's prepaid mobile phone service plans allow consumers to avoid entering long-term contracts like those offered by leading network providers that often last for two years.

1 Consumers instead pay an up-front fee for a service plan that provides a specified number of days
2 of mobile service. The plans are renewable, and many consumers choose an "auto refill option"
3 by which they are automatically reenrolled in their initially chosen service plans.

4     21. TracFone advertises and sells a number of prepaid mobile phone service plans,
5 about a quarter of which offer "unlimited" talk, text, and mobile data service. Approximately 99%
6 of TracFone's "unlimited" talk, text, and mobile data service customers have a 30-day plan, which
7 is typically sold at $45 or $50 per month.

8     22. TracFone advertises its mobile phones and mobile phone service plans through
9 print, radio, Internet, and television advertisements. It sells its mobile phones and mobile phone
10 service plans through a variety of marketing channels, including its own Internet websites, the
11 Internet websites of third-party Internet retailers like Amazon.com, and national retail stores like
12 Wal-Mart, Target, and Best Buy.

13 <div align="center">***TracFone's "Unlimited" Mobile Data Service***</div>

14     23. Since 2009, TracFone has solicited consumers to purchase its mobile data service
15 by advertising "unlimited" talk, text, and mobile data service.

16     24. TracFone's advertising and marketing of "unlimited" mobile data service has led
17 consumers to believe that TracFone would not limit the amount of mobile data that they could use
18 in a service period.

19     25. Mobile data service allows consumers to engage in online mobile activities such as
20 accessing the Internet; viewing websites; navigating using GPS; communicating through emails,
21 video chats, and texts; playing Internet-based mobile games; downloading or streaming audio and
22 video content; and using mobile applications like YouTube, Netflix, and Skype.

23     26. Many online mobile activities are data-intensive and highly prized by consumers.
24 Some data-intensive mobile applications such as YouTube come preinstalled on the smartphones
25 that TracFone sells.

26     27. TracFone has emphasized its claim of "unlimited" talk, text, and mobile data
27 service in all, or almost all, of its advertising and marketing efforts.

28

### Straight Talk Wireless

28.  For instance, under its Straight Talk Wireless brand, TracFone aired a video advertisement in which a spokesperson tells consumers that TracFone offers "unlimited everything," while the screen image below reinforces that representation:



29.  TracFone repeated the same representation of "unlimited" talk, text, and mobile data service in all, or almost all, of its Straight Talk branded marketing materials, including its print, radio, Internet, and television advertisements, product packaging, product labeling, and retail display advertising materials.  The marketing materials below are representative:



**Net10 Wireless**

30. Similarly, under its Net10 Wireless brand, TracFone aired a video advertisement in which a spokesperson tells consumers that TracFone offers "unlimited everything," while the screen image below reinforces that representation:



31. As with its Straight Talk brand, TracFone repeated the same representation of "unlimited" talk, text, and mobile data service in all, or almost all, of its Net10 Wireless branded marketing materials, including its print, radio, Internet, and television advertisements, product

packaging, product labeling, and retail display advertising materials. The marketing materials below are representative:




### Simple Mobile

32. TracFone's advertisements and other marketing materials for its Simple Mobile brand, which targets young adults, also generally repeated TracFone's representation of "unlimited" talk, text, and mobile data service:



SIMPLE Mobile
IT'S YOUR PHONE.
SO WHY ARE THEY CONTROLLING IT?
$40
UNLIMITED EVERYTHING
TALK TEXT WEB
MORE INFO

Subject to applicable tariffs and conditions of use.
For MetroCard Customer Service, call 511 or go to eFIX at mta.info
$40
UNLIMITED NATIONWIDE
TALK, INTERNATIONAL TEXT & DATA
SIMPLE Mobile
simplemobile.com

**Telcel America**

33. Similarly, TracFone's advertisements and other marketing materials for its Telcel America brand, which targets the Hispanic population, also generally repeated TracFone's representation of "unlimited" mobile talk, text, and data service:

TELCEL NOW IN AMERICA.
NO CONTRACTS OR CREDIT CHECKS.
$45
30 DAY PLAN
UNLIMITED NATIONWIDE
UNLIMITED NATIONWIDE TALK, TEXT, 4G SPEEDS & 411
$60
30 DAY PLAN
UNLIMITED INTERNATIONAL*
UNLIMITED NATIONWIDE TALK, TEXT, DATA & 411
THE BEST WAY TO CALL MEXICO, INCLUDING MOBILE TO MOBILE.
INCLUDES MOBILE TO MOBILE CALLS TO MEXICO

***TracFone's Undisclosed Data Suspension and Throttling Practices***

34. Despite advertising "unlimited" mobile data service, TracFone suspended or throttled the mobile data service of customers who used more than a fixed amount of mobile data in a thirty-day service period.

35. Data suspension involved terminating consumers' mobile data service so that they could not send or receive mobile data.

36. Data throttling involved significantly reducing the speed of consumers' mobile data service, which significantly impaired their ability to engage in online mobile activities.

37. Consumers whose mobile data service was throttled by TracFone often experienced at least a 60% reduction in speed, and numerous consumers experienced more than a 90% reduction in speed.

38. The reduced speed from throttling significantly impaired the ability of many consumers to engage in online mobile activities. For example, throttled consumers often could not use mobile applications such as YouTube, Netflix, or Skype.

39. Although throttling may not have always prevented consumers from using email or navigating the Internet, it often made those activities substantially more difficult to perform. For example, throttling caused many web pages and email messages and attachments to load significantly slower than they would have loaded if the mobile data service had not been throttled. As described by a TracFone employee who tested the effects of throttling: "Customer experience is deeply affected as It [sic] is very slow... 'Regular' users like me may get really upset. . . ."

40. TracFone varied the data limits at which it suspended or throttled its customers' mobile data service over time and, during some periods, varied them based on which mobile network provider TracFone used. TracFone set most limits for throttling between one and three gigabytes, and set most limits for suspension between four and five gigabytes.

41. Once customers began to approach TracFone's fixed data limits, TracFone would usually send them a prerecorded voice message that did not disclose TracFone's data limits, but instead provided a warning similar to the following: ". . . if your excessive data use continues, we may need to suspend or deactivate your data service or terminate your phone service altogether as specified in the terms and conditions of service. . . ."

42. Although this message referenced TracFone's terms and conditions, TracFone did not disclose in its terms and conditions that it had fixed data limits or that it would suspend or throttle service once a consumer reached a fixed limit.

-10-
COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

43. In numerous instances, customers who received these warnings decreased their data usage because they feared that TracFone would suspend or deactivate their data service.

44. In numerous instances, TracFone suspended or throttled the data service of customers who continued their data usage and exceeded certain undisclosed data limits that TracFone set internally.

45. TracFone suspended the mobile data service of hundreds of thousands of customers and throttled the mobile data service of millions of customers for exceeding its undisclosed fixed data limits.

46. TracFone's terms of sale did not permit returns or refunds of mobile service. While TracFone processed some requests for refunds anyway, those refunds were only provided to a small fraction of the customers whose mobile data service TracFone suspended or throttled.

47. Customers whose mobile data service was suspended by TracFone typically could only restore service by purchasing another month of service at full cost (usually $45 to $50).

48. The data limits set by TracFone were not driven by technological constraints. They were not, for instance, a response to real-time network congestion.

49. As a reseller, TracFone must purchase the mobile data service that it sells to consumers from mobile network service providers. Because TracFone offered its "unlimited" mobile data service at a fixed price, more data usage by its customers meant more costs, and less profit, for TracFone.

50. With the increasing popularity of online mobile activities, TracFone sought to benefit from marketing its mobile data service as "unlimited," while at the same time protecting its profit margins by throttling or suspending consumers' mobile data service. As expressed by TracFone in internal documents: "In an effort to control excessive data usage and reduce the high costs related to it, TracFone created and implemented a Throttling and Data Suspension policy. . . ."

***TracFone's Failure to Disclose its Data Suspension and Throttling Practices***

51. In numerous instances, from 2009 to at least September 2013, TracFone failed to disclose in its advertising or terms and conditions that customers' mobile data service would be

-11-
COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF

throttled or suspended if they used a fixed amount of mobile data in a thirty-day service period.

52. In or around September 2013, TracFone began for the first time to state in most of its advertising materials and terms and conditions that it would throttle its customers' mobile data service if they used a fixed amount of mobile data in a thirty-day service period. But these post-September 2013 statements often were not clear and conspicuous. (TracFone at the same time ceased suspending consumers' mobile data service and started relying solely on throttling to enforce its fixed data limits.)

53. For example, TracFone's post-September 2013 product packaging and activation cards for its most popular "unlimited" brand, Straight Talk, typically included this information in small font on the backside of the package or card—far away from its representations of "unlimited" mobile data service. Because these product packaging and activation cards are frequently locked on display racks, consumers often cannot even turn to the backside without the assistance of a store employee.

54. Many of TracFone's post-September 2013 store banners and product stands also contained disclosures in small font that were dwarfed by prominent claims of "unlimited" mobile data.

55. In addition to the lack of adequate disclosures on its product packaging, activation cards, store banners, and product stands, many of TracFone's post-September 2013 webpages contained representations of "unlimited" data without clear and conspicuous disclosures. On many of these webpages, the disclosures were displayed in small font with poor contrast and could only be viewed by scrolling down the pages.

56. Throughout the entire time that TracFone has advertised "unlimited" mobile data service, numerous consumers who responded to TracFone's advertising by purchasing "unlimited" mobile data service did not know that TracFone would throttle or suspend their mobile data service if they used a fixed amount of mobile data in a thirty-day service period. This information would have been important for them to know in evaluating whether to purchase TracFone's "unlimited" mobile data service.

57. In sum, from 2009 to present, despite advertising its mobile data service as

"unlimited," TracFone failed in numerous instances to disclose or adequately disclose that it suspended or throttled the mobile data service of its customers once they used a fixed amount of mobile data in a thirty-day service period.

## VIOLATIONS OF THE FTC ACT

58. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

59. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I

### Section 5(a) Deceptive Failure to Disclose

60. In the advertising and sale of "unlimited" mobile data service, TracFone has represented, directly or indirectly, expressly or by implication, to consumers that the amount of mobile data that they could access in any service period would not be limited.

61. TracFone failed to disclose or adequately disclose that it imposed significant and material restrictions on the quantity and speed of mobile data available to customers who used more than a fixed amount of mobile data in a given service period. The failure to disclose or adequately disclose these restrictions, in light of the representations made, is a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

62. Consumers have suffered and will continue to suffer substantial injury as a result of TracFone's violations of the FTC Act. In addition, TracFone has been unjustly enriched as a result of its unlawful acts or practices. Absent injunctive relief by this Court, TracFone is likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

63. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

**PRAYER FOR RELIEF**

Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, respectfully requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act by TracFone;

B. Award such relief as the Court finds necessary to redress injury to consumers resulting from TracFone's violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

C. Award the FTC the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: January 28, 2015

Respectfully submitted,

JONATHAN E. NUECHTERLEIN
General Counsel

_____
S. SPENCER ELG
ANNA M. BURNS

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION